**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHRISTOPHER MORIARTY, | : | |
| | : | Civil Action No. 12-3013 (RMB) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| ABIGAIL LOPEZ DE LASALLE, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Plaintiff pro se
Christopher Moriarty
75347-053
FCI Fort Dix
PO Box 2000
Fort Dix, NJ 08640

**BUMB**, District Judge

Plaintiff Christopher Moriarty, a prisoner currently confined at FCI Fort Dix in Fort Dix, New Jersey, seeks to bring this action in forma pauperis pursuant to Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

## I. BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review. Plaintiff alleges that on May 18, 2010, Defendant Willy Tyler drug Plaintiff out of his bunk bed onto the floor and beat, stomped, and slashed Plaintiff with an industrial screw. Plaintiff states that he suffered multiple abrasions, lacerations, and blunt force trauma to his head, face, neck, back, left shoulder, and left wrist, that he lost hearing in his right ear, and that he has sustained psychological damage due to the incident.

Plaintiff was questioned, photographed, and escorted to the SHU and remained there while an investigation into the assault took place. Plaintiff states that Defendant S.I.S. Lieutenant Hall conducted the investigation, which took nearly six weeks. Plaintiff alleges that Defendant Hall failed to properly investigate the incident and prosecute Defendant Tyler.

Plaintiff states that he complained of the ongoing pain and discomfort and in May of 2011 was seen by a specialist, an

orthopedic surgeon Dr. Glick. Dr. Glick requested an MRI of Plaintiff's left shoulder and wrist and an EMG nerve study. The MRI of the shoulder and wrist were conducted on July 8, 2011 and the EMG was conducted on September 2, 2011. Plaintiff acknowledges that the injuries to the shoulder and wrist were a pre-existing condition from a previous injury which occurred in 2008. He states that those pre-existing conditions were exacerbated by the alleged attack by Defendant Tyler. Dr. Glick recommended two surgeries, however, Plaintiff acknowledges that he decided to delay the surgeries so that he could receive further consultation.

At a follow up appointment with Dr. Glick on November 8, 2011, Dr. Glick recommended that Plaintiff return to a neurosurgeon for further investigation of the results of the EMG study. Plaintiff quotes Dr. Glick's recommendations as stating: "In view of patient's continued complaints, it would be appropriate for the patient to be seen for his neck and back issues by the neurologist."

Plaintiff states that "in anticipation of resistance," he initiated an administrative request process to force compliance with the recommendation of Dr. Glick that Plaintiff see a neurologist. Plaintiff alleges that Defendants Donna Zickefoose, Warden and J.L. Norwood, Regional Director did not intervene in the situation related to disapproval of specialist recommendation

as outlined in Plaintiff's administrative remedy requests. Plaintiff states that Defendant Zickefoose showed "deliberate indifference" to the specialist's recommendation in her response to Plaintiff's administrative remedy form dated November 23, 2011 when she responded that Plaintiff was receiving "adequate and necessary" treatment.

Defendant Abigail Lopez de LaSalle disapproved the recommendation of the specialist on November 26, 2011.  Plaintiff states that he experienced continued pain and suffering as a result of the disapproval of the recommended treatment.

Plaintiff states that Defendant S.I.S. Lieutenant Hall did not investigate or prosecute the inmate whom Plaintiff alleges attacked him and that Defendant Norwood denied Plaintiff of his civil rights "in not intervening with his administrative remedy response dated January 3, 2012, in which he responded that the medical staff was adequately addressing Plaintiff's needs and that his "access to sick call" was "adequate to address [his] needs."

Plaintiff states that he exhausted the administrative remedy process and all requests for relief were denied.

Plaintiff seeks: (1) declaration from this Court that Defendants violated Plaintiff's constitutional rights, (2) "judgment in favor of plaintiff for nominal, compensatory, and punitive damages," (3) injunctive relief that "plaintiff's

medical needs are addressed including the neurologist's consultation," and (4) any other such relief as deemed proper by this Court.

## II. STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity. The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b). This action is subject to sua sponte screening for dismissal under both 28 U.S.C. §§ 1915(e)(2)(B) and 1915A because Plaintiff is proceeding as an indigent and is a prisoner.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976)); see also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).

The Supreme Court refined the standard for summary dismissal of a complaint that fails to state a claim in Ashcroft v. Iqbal,

556 U.S. 662 (2009). The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Citing its opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court held that, to prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)(citing Iqbal, 129 S. Ct. at 1948).

    The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. See Iqbal, 129 S. Ct. at 1949-50. See also Twombly, 505 U.S. at 555, & n.3; Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011). "A complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler, 578 F.3d at 211 (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).

III.   BIVENS ACTIONS

In <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 389 (1971), the Supreme Court held that one is entitled to recover monetary damages for injuries suffered as a result of federal officials' violations of the Fourth Amendment.  In doing so, the Supreme Court created a new tort as it applied to federal officers, and a federal counterpart to the remedy created by 42 U.S.C. § 1983.  The Supreme Court has also implied <u>Bivens</u> damages remedies directly under the Eighth Amendment, <u>see</u> <u>Carlson v. Green</u>, 446 U.S. 14 (1980), and under the equal protection component of the Fifth Amendment's Due Process Clause, <u>see</u> <u>Davis v. Passman</u>, 442 U.S. 228 (1979).

<u>Bivens</u> actions are simply the federal counterpart to § 1983 actions brought against state officials who violate federal constitutional or statutory rights.  <u>Egervary v. Young</u>, 366 F.3d 238, 246 (3d Cir. 2004), <u>cert.</u> <u>denied</u>, 543 U.S. 1049 (2005). Both are designed to provide redress for constitutional violations.  Thus, while the two bodies are not "precisely parallel," there is a "general trend" to incorporate § 1983 law into <u>Bivens</u> suits.  <u>Chin v. Bowen</u>, 833 F.2d 21, 24 (2d Cir. 1987).

In order to state a claim under <u>Bivens</u>, a claimant must show (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right

7

was caused by an official acting under color of federal law.  See Mahoney v. Nat'l Org. For Women, 681 F.Supp. 129, 132 (D.Conn. 1987) (citing Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155-56 (1978)).

The United States has sovereign immunity except where it consents to be sued.  United States v. Mitchell, 463 U.S. 206, 202 (1983).  In the absence of such waiver, a plaintiff cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, see FDIC v. Meyer, 510 U.S. 471, 484-87 (1994), or against any of the individual defendants in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 166 (1985)(a suit against a government officer in his or her official capacity is a suit against the government).

## IV.  ANALYSIS

### A.  Denial of Claim Related to Alleged Assault

To the extent that Plaintiff wishes to bring claims related to his alleged assault, he is not entitled to relief as against Defendant Tyler.  As to Defendant Tyler, Plaintiff has not pled any grounds for relief as he has not shown (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law.  See Mahoney v. Nat'l Org. For Women, 681 F.Supp. 129, 132 (D.Conn. 1987).  The alleged

beating by Defendant Tyler, a fellow inmate, was not a deprivation of a constitutional right, nor was Tyler acting under color of federal law.  As such, Plaintiff has no claim of deprivation of constitutional rights by Defendant Tyler and all claims against him will be dismissed with prejudice.

B.   <u>Denial of Claim Related to Alleged Failure to Investigate</u>

Plaintiff's claims against Defendant Lieutenant Hall consist of allegations that Hall didn't properly investigate Plaintiff's grievances related to the alleged attack by Tyler upon Plaintiff. This claim fails to rise to the level of a constitutional deprivation sufficient to state a claim.  Indeed, "'an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim.'"  <u>See</u> <u>Graw v. Fantasky</u>, 68 Fed.Appx. 378 (3d Cir. 2003)(<u>citing</u> <u>DeShaney v. Winnebago County Dep't of Soc. Servs.</u>, 489 U.S. 189, 195-96 (1989).  Accordingly, this claim will be dismissed with prejudice for failure to state a claim.

C.   <u>Denial of Medical Care Claim</u>

Plaintiff asserts that defendants violated his Eighth Amendment right to adequate medical care by denying him medical treatment.  It would appear that he is dissatisfied with the treatment that he received following the alleged attack as referenced above.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-04, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal

10

quotations and citations omitted); see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837–38, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D.Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir.1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation

11

and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. See Rouse, 182 F.3d at 197. The court also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment. Atkinson, 316 F.3d at 266. See also Monmouth County Correctional Institutional Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir.1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

Plaintiff's allegations do not satisfy the objective element showing deliberate indifference necessary to support an Eighth Amendment denial of medical care claim. He admits that he

12

received treatment—he was taken to the medical department and received follow-up consultations and treatment.

Plaintiff does allege that he did not receive certain treatment that was suggested by a specialist as appropriate treatment, but this does not show deliberate indifference. Even if Plaintiff were to allege facts showing that he did not receive proper treatment, at best, he would only be stating a claim of medical malpractice or medical negligence, which is not actionable under a § 1983 or Bivens action. See Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110 (even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation). Because it is possible that Plaintiff could provide additional facts to support a claim as to this issue, however, this Court will dismiss this denial of medical care claim, without prejudice, for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

D. Denial of Claim Against Supervisory Defendants

Plaintiff also appears to assert a claim of supervisor liability against the defendants Zickefoose and Norwood. In his Complaint, Plaintiff alleges a claim of supervisor liability by pleading that defendants had knowledge of the alleged denial of medical care through the administrative remedy process.

13

The Third Circuit permits § 1983 claims to proceed based on a theory of supervisory liability where a plaintiff can show defendants had knowledge of their subordinates' violations and acquiesced in the same. See Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995) (permitting plaintiff to hold a supervisor liable for a subordinate's § 1983 violation provided plaintiff is able to show "the person in charge ... had knowledge of and acquiesced in his subordinates' violations"). To impose liability on a supervisory official there must be "both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's assertion could be found to have communicated a message of approval to the offending subordinate." Colburn v. Upper Darby Twp., 838 F.2d 663, 673 (3d Cir. 1988). Allegations of actual knowledge and acquiescence must be made with particularity. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). In this case, the Complaint does not allege or suggest that any of the supervisory defendants had contemporaneous knowledge of the incident.

Plaintiff is not entitled to relief as against the supervisory defendants here; Plaintiff alleges that they became aware of the claims via his grievance filings. Participation in the after-the-fact review of a grievance or appeal is insufficient to establish personal involvement on the part of

those individuals reviewing grievances. See Rode, 845 F.2d at 1208 (finding the filing of a grievance insufficient to show the actual knowledge necessary for personal involvement); Brooks v. Beard, 167 Fed. Appx. 923, 925 (3d Cir.2006) (per curiam) (allegations of inappropriate response to grievances does not establish personal involvement required to establish supervisory liability).

Accordingly, the supervisory defendants cannot be held liable for Plaintiff's medical claims here and claims against these defendants will be dismissed with prejudice. Further, Plaintiff has not alleged any supervisory liability as to any other claims raised in the Complaint.

## V. CONCLUSION

For the reasons set forth above, the Complaint will be dismissed for failure to state a claim.[1] However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to state a claim as to certain issues, the

---

[1] The Court notes that "'[g]enerally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action.' ... The dispositive inquiry is whether the district court's order finally resolved the case." Martin v. Brown, 63 F.3d 1252, 1257-58 (3d Cir. 1995) (quoting Borelli v. City of Reading, 532 F.2d 950, 951 (3d Cir. 1976)) (other citations omitted). In this case, if Plaintiff can correct the deficiencies of his Complaint, he may file a motion to re-open these claims in accordance with the court rules.

Court will grant Plaintiff leave to file an amended complaint.[2]

An appropriate order follows.

                                          s/Renée Marie Bumb
                                          Renée Marie Bumb
                                          United States District Judge

Dated: October 18, 2012

---

[2] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.