NOT FOR PUBLICATION

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                    :
CHRISTOPHER MORIARTY,               :
                                    :   Civil Action No. 12-3013 (RMB)
                Plaintiff,          :
                                    :
            v.                      :   **MEMORANDUM OPINION AND ORDER**
                                    :
ABIGAIL LOPEZ DE LaSALLE,           :
et al.,                             :
                                    :
                Defendants.         :
_____     :

**BUMB**, District Judge:

    This matter comes before the Court upon Plaintiff's filing

of his second amended pleading, see Docket Entry No. 8.

    Plaintiff, then-a-federal-prisoner confined at FCI Fort Dix,

Fort Dix, New Jersey, commenced this matter by filing a civil

complaint executed pursuant to Bivens v. Six Unknown Fed.

Narcotics Agents, 403 U.S. 388 (1971).  See Docket Entry No. 1.

His original pleading asserted that

> on May 18, 2010, [inmate] Willy Tyler . . . beat,
> stomped, and slashed Plaintiff with an industrial
> screw.  Plaintiff state[d] that he suffered multiple
> [injuries as a result of that] incident.  . . .
> Plaintiff state[d] that . . . Lieutenant Hall conducted
> the investigation [of that incident but, in Plaintiff's
> opinion, conducted the investigation improperly].
> Plaintiff [also] state[d] that . . . in May of 2011[,
> he] was seen by . . . an orthopedic surgeon Dr. Glick
> [who] requested an MRI of Plaintiff's left shoulder and
> wrist and an EMG nerve study.  The MRI of the shoulder
> and wrist were conducted on July 8, 2011 and the EMG
> was conducted on September 2, 2011.  Plaintiff
> acknowledges that the injuries to the shoulder and

wrist were a pre-existing condition from a previous injury which occurred in 2008 [but claimed that his] pre-existing conditions were exacerbated by the alleged attack by . . . Tyler.  Dr. Glick recommended two surgeries [which] Plaintiff [elected] to delay . . . so that he could receive further consultation.  At a follow up appointment with Dr. Glick on November 8, 2011, Dr. Glick recommended that Plaintiff return to a neurosurgeon for further investigation of the results of the EMG study.  . . .  Plaintiff state[d] that . . . he initiated an administrative request process to force compliance with [that] recommendation of Dr. Glick . . . .  Plaintiff allege[d] that [the] Warden and [the] Regional Director did not intervene in the situation related to disapproval of [Dr. Glick's] recommendation . . . .  Plaintiff state[d] that [the Clinical Director,] Abigail Lopez de LaSalle [eventually] disapproved the recommendation of [Dr. Glick.]

Moriarty v. De Lasalle, 2012 U.S. Dist. LEXIS 150580, at *1-4

(D.N.J. Oct. 18, 2012).

Naming Tyler, Hall, LaSalle, the Warden and the Regional Director as Defendants, Plaintiff sought declaratory relief and monetary damages.  See id. at *4-5.  This Court screened his allegations for sua sponte dismissal and pointed out that: (a) Plaintiff's claims against Tyler were facially deficient for failure to meet the color of law requirement; (b) Plaintiff's allegations against Hall failed to "rise to the level of a constitutional deprivation sufficient to state a claim"; (c) Plaintiff's challenges against the Warden and Regional Director were flawed because they were based solely on the theory of respondeat superior; and (d) Plaintiff's allegations against LaSalle were insufficiently pled.  Id. at *5-16.  This Court, therefore, granted Plaintiff leave to amend his allegations

2

against LaSalle and conclusively dismissed the remainder of his claims.  See id. at *13-15 (citing Monmouth Cty Corr. In. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir.1993)).

In response, Plaintiff filed his first amended pleading that added challenges wholly unrelated to the transactions alleged in his original complaint.  See Docket Entry No. 6.  This Court, therefore, dismissed Plaintiff's unrelated challenges pursuant to Fed. R. Civ. P. 15, 18 and 20; such dismissal was: (a) without prejudice to raising Plaintiff's new claims in a separate civil complaint; and (b) without prejudice to Plaintiff's re-amending his claims against LaSalle.  See Docket Entry No. 7.

The pleading at bar followed.  See Docket Entry No. 8. Largely dedicated to discussion of law as Plaintiff perceives it, this second amended complaint alleges that LaSalle had to be deemed deliberately indifferent to Plaintiff's serious medical needs because she disagreed with Dr. Glick's recommendation that a neurosurgeon had to re-review Plaintiff's EMG study.  Plaintiff misunderstands the relevant Eighth Amendment test.

The issue of what treatment is constitutionally required is necessarily fact-specific and claim-specific.  For instance, an alleged deficiency might implicate concerns purely of medical malpractice, i.e., negligence not actionable under § 1983.  See

DeJesus v. Corr. Med. Servs., 2014 U.S. App. LEXIS 14557, at
*10-11 (3d Cir. July 30, 2014) ("When distilled to their core,
[the plaintiff's claim] sound[s] in negligence or malpractice . .
. . Claims of negligence or medical malpractice do not
constitute deliberate indifference").  That said, when a
*prescribed* medical treatment is denied, reduced or changed *for
non-medical reasons*, including financial, administrative or
logistical, the so-denied/reduced/changed treatment suggests an
act of deliberate indifference and amounts to a violation of both
procedural and substantive due process with regard to those
mental patients whose sole hope for release hinges on obtaining
their prescribed mental therapy.  See Durmer, 991 F.2d at 68
(relying on Lanzaro, 834 F.2d at 346, for the observation that a
claim of "deliberate indifference' does not require a showing of
complete failure/refusal to provide medical care, since such
claim "could exist in a variety of different circumstances");
accord Napoleon, 897 F.2d at 113 ("The . . . complaint, fairly
read, suggests that the doctor deliberately treated [the inmate]
with an inappropriate drug for no valid [medical] reason.  This
is sufficient to state a claim for deliberate indifference to
serious medical needs").

    Here, it does not appear that Dr. Glick prescribed a re-
review of Plaintiff's EMG study by a neurosurgeon.  Rather, it
appears that Dr. Glick merely recommended such course of action

as one of various courses of action.  Moreover, even if Dr. Glick
made such prescription, the fact that LaSalle disagreed with Dr.
Glick's recommended course of treatment cannot support a viable
constitutional claims if LaSalle's disagreement was based on her
medical judgment, even if her judgment was eventually proven
medically erroneous and amounted to medical malpractice or to any
other form of negligence.  See Napoleon, 897 F.2d at 110 (a
doctor's disagreement with another doctor's professional judgment
is not actionable).  Conversely, if LaSalle denied Dr. Glick's
prescribed treatment for non-medical reasons, the facts so
showing would amount to a viable constitutional claim.  See
Durmer, 991 F.2d at 68; Lanzaro, 834 F.2d at 346.

Here, Plaintiff's second amended complaint is void of such
facts.  See generally, Docket Entry No. 8.  While lengthy, this
pleading strives to convince this Court that LaSalle's
disagreement with Dr. Glick's recommendation must be an act of
deliberate indifference.  See id.  However, the Supreme Court has
stressed that such conclusory statements are insufficient  See
Ashcroft v. Iqbal, 556 U.S. 662, 682-84 (2009) (the defendant's
policy choices might have been benign even though other persons
utilized those policies to commit wrongful acts); Arqueta v. U.S.
Immigration & Customs Enforcement, 643 F.3d 60, 70 (3d Cir. 2011)
(same).

Thus, in order to state a plausible claim against LaSalle, Plaintiff need not engage in extensive discussions of law. But he is obligated to state his facts, if any, showing that: (a) Dr. Glick actually prescribed a particular course of treatment; *and* (b) LaSalle's disagreement with Dr. Glick's prescription was not rooted in LaSalle's medical judgment as to what would be an appropriate treatment for Plaintiff.[1]

IT IS, therefore, on this **11th** day of **December 2014**,

**ORDERED** that the second amended complaint, Docket Entry No. 8, is dismissed without prejudice; and it is further

**ORDERED** that the Clerk shall administratively terminate this matter by making a new and separate entry on the docket reading, "CIVIL CASE TERMINATED"; and it is further

**ORDERED** that this Court retains its jurisdiction over this matter for the period of ninety days, subject to extension if warranted; and it is further

**ORDERED** that Plaintiff may have this matter reopened in the event he submits, within thirty days from the date of entry of this Memorandum Opinion and Order, his third amended complaint

---

[1]   The Court takes this opportunity to note that Plaintiff was not entitled to the "best" treatment, see Hudson v. McMillian, 503 U.S. 1, 9 (1992) ("Society does not expect that prisoners will have unqualified access to health care") , and – therefore – the mere fact that Dr. Glick's recommendation envisioned a better or, perhaps, more precise, or more elaborate treatment than the one selected by LaSalle cannot support a constitutional claim.

detailing his facts, if any, plausibly establishing that Dr. Glick actually prescribed the treatment at issue *and* LaSalle's disagreement with Dr. Glick's prescription was rooted in non-medical reasons (rather than in LaSalle's medical judgment, even if that judgment was medically erroneous); and it is finally

**ORDERED** that the Clerk shall serve this Memorandum Opinion and Order upon Plaintiff by regular U.S. mail.

                    **s/Renée Marie Bumb**
                    **RENÉE MARIE BUMB**
                    **United States District Judge**